UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**MORTENSON KIM, INC., f/k/a
MORTENSON SAFAR KIM, INC.,**

        **Plaintiff,**

        v.                      Case No. 17-CV-1201

**SHANNON SAFAR,**

        **Defendant.**

---

## ORDER

---

Plaintiff Mortenson Kim, Inc., formerly known as Mortenson Safar Kim, Inc. (MSK), a Wisconsin corporation whose principal place of business is in Milwaukee, Wisconsin, filed this lawsuit against defendant Shannon Safar, an Indiana resident, on September 5, 2017. Safar has filed a motion to compel arbitration. (ECF No. 8.) Mortenson Kim opposes the motion. Both parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 3, 10.) Because the amount in controversy exceeds $75,000, the court has jurisdiction under 28 U.S.C. § 1332.

# FACTS

Mortenson Kim is a marketing, media, and public relations firm. (ECF No. 12 at ¶ 1.) Safar became an employee of Mortenson Kim in 2008 and its president in 2011. (*Id*. at ¶ 2.) Chris Mortenson is the controlling shareholder and chief executive officer of Mortenson Kim. (*Id*. at ¶ 1.)

In 2012 Mortenson included Safar in a plan to solicit a potential client that represented a substantial business opportunity. (*Id*. at ¶¶ 3-6.) Mortenson states that in November 2012 Safar threatened to withhold the potential client's business unless she was provided increased compensation and an ownership interest in Mortenson Kim. (*Id*. at ¶ 7.) Mortenson states that, because of the substantial time, resources, and personal funds invested in attempting to gain the potential client's business, he was forced to give in to Safar's demands or face financial ruin. (*Id*. at ¶ 8.) Mortenson additionally alleges that in November 2013 Safar engaged in secret negotiations with a competing advertising agency who expressed interest in acquiring Mortenson Kim. (*Id*. at ¶ 13.)

On March 15, 2014, Safar executed three agreements that gave her a ten percent ownership interest in MSK. First, she signed a First Amended and Restated Stock Purchase and Transfer Restriction Agreement (the Shareholders Agreement). (ECF No. 1-4.) The purpose of the Agreement was to "amend and restate [MSK's] Stock Restriction Agreement…in order to better reflect [MSK's and its shareholders']

intentions regarding the continuity and proper maintenance, control and operation of the business of [MSK]." (*Id.* at 1.) The Shareholders Agreement includes an arbitration clause that states:

> Any controversy arising out of, or relating to, this Agreement or any modification or extension of this Agreement, including any claim for damages, rescission, specific performance or other legal or equitable relief, will be settled by arbitration in Milwaukee, Wisconsin, in accordance with the rules then obtaining of the American Arbitration Association. The parties agree that arbitration proceedings must be instituted within two (2) years after the claimed breach occurred, and that the failure to institute arbitration proceedings within this period will constitute an absolute bar to the institution of any proceedings and a waiver of all claims. The determination of the arbitrator when made will be binding upon all parties bound by the terms of this Agreement. Judgment upon the award rendered by the arbitrator may be entered in any court of competent jurisdiction.

(ECF No. 1-4 at 18.)

In addition, that same day Safar executed a Subscription Agreement effective January 1, 2014, for the option to purchase ten shares of MSK stock. (ECF No. 1-2.) The MSK Subscription Agreement stated that Safar "agrees that the execution of this Subscription Agreement constitutes his or her acceptance of the [Shareholders] Agreement, … and [Safar] agrees to execute a copy of the [Shareholders] Agreement and to be bound by all of the terms and conditions thereof[.]" (ECF No. 1-2 at 3.) The same day she signed a second Subscription Agreement for an option to purchase an additional ten shares in MSK. (ECF No. 1-3.) It contained the same language binding Safar to the terms and conditions of the Shareholders Agreement.

Mortenson Kim alleges a series of interactions in which Safar undermined business plans and misrepresented information to the detriment of MSK. (ECF No. 1, ¶¶ 23-25.) Mortenson offered Safar the opportunity to resign on July 24, 2017, and her employment was officially terminated on July 28, 2017. (*Id*. at ¶ 25.) According to Mortenson Kim, on July 27, 2017, Safar accessed confidential and proprietary business information concerning MSK's clients and accounts without MSK's knowledge or consent, deleted the call history from her company phone after being explicitly instructed not to do so, and still has two of MSK's external hard drives on which resides confidential MSK business information. (*Id*. at ¶¶ 26, 27.)

Mortenson Kim's Complaint contains six causes of action. Its first claim seeks a declaration that "Safar's ownership interest in MSK was obtained as the result of economic duress, and that any ownership transfers, the Shareholders Agreement, the MSK Subscription Agreement, and the First Amendment be declared null and void ab initio, as those documents relate to Safar." (ECF No. 1, ¶ 33.) The second claim alleges that "Safar, through her unlawful and unreasonable threats and demands, and her disparagement of Mortenson and MSK to MSK's employees, clients and competitors, breached the MSK Subscription Agreement." (ECF No. 1, ¶ 35.) The third claim alleges that Safar breached her fiduciary duties owed to MSK as its president. (ECF No. 1, ¶ 37.) The fourth claim alleges that Safar breached her duties of loyalty, good faith and fair dealing owed MSK as its president. (ECF No. 1, ¶ 40.) The fifth claim seeks to enjoin

Safar from using confidential and proprietary MSK business information which she wrongfully appropriated in violation of, among other things, her obligations under the Shareholders Agreement. (ECF No. 1, ¶¶ 42-43.) Finally, in order to determine the amount of damages it has sustained, the sixth claim seeks an accounting "of the confidential and proprietary information Safar has taken from [MSK]." (ECF No. 1, ¶ 44.)

## ANALYSIS

Section 2 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16, states:

> A written provision in…a contract…to settle by arbitration a controversy thereafter arising out of such contract…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

"Challenges to the validity of arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract' can be divided into two groups." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). "One type challenges specifically the validity of the agreement to arbitrate." *Id*. "The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id*. A challenge to the validity of a contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator. *Id*. at 449.

In order to compel arbitration under the Federal Arbitration Act, a party needs to show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration. *Druco Restaurants, Inc. v. Steak n Shake Enterprises, Inc.*, 756 F.3d 776, 781 (7th Cir. 2014). State law contract principles govern the question of whether the parties agreed to arbitrate a certain matter. *Id*. "[A] court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012) (quoting *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The normal procedure when an arbitrable issue arises in the course of a federal lawsuit is to stay the suit to await the outcome of arbitration. *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002).

Mortenson Kim contends that Safar obtained her status as a shareholder in MSK through economic duress. It seeks to void the transactions that made her a shareholder in MSK. As such, she is not lawfully a shareholder with standing to enforce the Shareholder Agreement, including its arbitration provision. (ECF No. 11 at 1.)

In addition, Mortenson Kim contends that its claims for breach of fiduciary duty and duty of loyalty do not arise out of or relate to the Shareholder Agreement. It argues

6

that Safar breached those duties *before* she entered into the Shareholder Agreement. (ECF No. 11 at 6-7.) As such, those claims are not subject to the Shareholder Agreement.

However, the breach of Safar's duties prior to entering into the Shareholders Agreement is only part of Mortenson Kim's lawsuit. Mortenson Kim's complaint includes allegations of Safar's wrongful conduct *after* signing the Shareholders Agreement and related to her duties under the Shareholders Agreement. Furthermore, the broad language contained in the arbitration clause (that any controversy *relating* to the Shareholders Agreement will be settled by arbitration) makes it more likely that at least a significant portion of Safar's alleged wrongful conduct falls within the scope of the arbitration clause. As required whenever there is doubt concerning the scope of arbitrable issues, the doubt will be resolved in favor of arbitration.

Furthermore, "[t]o make a claim of economic duress under Wisconsin law, Mortenson Kim must allege facts that demonstrate that 'a wrongful or unlawful act or threat' by Safar deprived Mortenson Kim of its 'unfettered free will' and forced it to accept the arbitration clause in the agreement." *S+L+H S.p.A. v. Miller-St. Nazianz, Inc.*, 988 F.2d 1518, 1528 (7th Cir. 1993) (citing *Pope v. Ziegler*, 127 Wis. 2d 56, 377 N.W.2d 201, 203 (Ct. App. 1985)). But Mortenson Kim does not allege that economic duress caused it to agree to the arbitration provision. Rather, it contends more broadly that economic duress caused it to enter into the Shareholders Agreement and the related Subscription

Agreements with Safar. It challenges the contracts in their entirety. That challenge must go to the arbitrator.

The First, Second, and Fifth Claims in the complaint clearly arise out of and relate to the Shareholders Agreement. They must be arbitrated. And the conduct that gives rise to the Third Claim (alleging breach of fiduciary duty) and the Fourth Claim (alleging breach of loyalty, good faith and fair dealing) is, at least to a substantial degree, the same conduct that forms the basis of the First, Second, and Fifth Claims. Indeed, the Complaint alleges that it was Safar's breach of those duties that left Mortenson with no choice but to make Safar a shareholder in MSK. In that sense, those claims also arguably "relate to" the Shareholders Agreement. And the last claim, seeking an accounting, similarly appears inextricably intertwined with all of the other claims.

In sum, the court concludes that this dispute is governed by the arbitration provision in the Shareholders Agreement such that all claims must be addressed in the first instance by the arbitrator. If a party contends that one or more claims are not arbitrable, that argument can be made first to the arbitrator. Instead of dismissing the lawsuit, the court will stay it because there might be grounds to later reinstate it.

**IT IS THEREFORE ORDERED** that Safar's motion to compel arbitration is **granted.**

**IT IS FURTHER ORDERED** that this action is stayed and closed for administrative purposes. The parties shall notify this court in writing of the resolution of the arbitration when one has been reached. Within thirty-days following a final decision in the arbitration proceedings, any party may move to have this cause of action restored to this court's docket. If no such motion is filed within the specified time frame, the case will be dismissed with prejudice.

Dated at Milwaukee, Wisconsin this 30th day of November, 2017.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge